THE INDIANOLA RAILROAD COMPANY v. J. B. FRYER.
(Case No. 542.)

1. CONSOLIDATION—LIABILITIES OF THE OLD COMPANIES.—After one
railroad company has consolidated with another as allowed by their
respective charters, and authorized and confirmed by legislative acts
conferring all rights, powers and privileges belonging to either on

Statement of the case.

the new company thus formed, all liabilities of either can thence-
forward only be enforced against, and in the name of, the consoli-
dated company.

2. WRIT OF ERROR — BOND — AFFIDAVIT.— Where a petition for writ
   of error is filed, but there is no writ of error bond, bond for cost,
   nor affidavit of inability to give such bond, the supreme court has
   no jurisdiction to revise the judgment of the court below.

APPEAL from Calhoun. Tried below before the Hon.
T. C. Barden.

Suit brought January 23, 1872, by J. B. Fryer against the
Indianola Railroad Company to recover compensation as
contractor for building the road, depot grounds, wharf
connections, switches, etc, and repairing that part of the
road already built.

His pleadings set out the contract with the railroad
company, which was made April 27, 1869, and was to the
effect that Fryer was to receive a salary as engineer of
$300 per month, and as contractor his compensation was
to be twenty-five per cent. of the difference between the
actual cost of the work under his management and what
it would have cost had it been done by Warner & Fryer
according to the contract, estimates, specifications and
schedule of prices made by them with said railroad com-
pany.

The company once had a contract with Warner &
Fryer to build the road, but that contract had by both
parties been abandoned, and the company had resumed
control of the road-bed and work before the contract with
Fryer was made, only a small part of the work having
been done. Fryer completed his work May 31, 1871, and
claimed that the saving in the cost of the road as built by
him, over what it would have cost had Warner & Fryer
built it under their contract, was $151,542, and that he
was entitled to twenty-five per cent. of that sum, for
which he prayed judgment, making his account an ex-
hibit, and also the Warner & Fryer contract and the

resolutions of the board of directors under which he was employed.   He also set up a *quantum meruit*.

By amendment filed June 8, 1874, Fryer alleged that on 19th May, 1871, under an act of the legislature, the said railroad company was consolidated with the San Antonio & Mexican Gulf Railroad, with which it connected, under the name and style of the Gulf, Western Texas & Pacific Railroad, and he made the G., W. T. & P. R. R. a party defendant and asked judgment against that company.

The I. R. R. Company pleaded, 1st, a general demurrer; 2d, the statute of frauds, that the contract or agreement with Fryer was not in writing signed and sealed by the I. R. R. Company, and that it was not to be performed within a year; 3d, want of power in the president of the company to make the contract, under the authority given him thereto by the board of directors; 4th, a special denial of the making of such a contract as Fryer set up.   And pleaded further, that the twenty-five per cent. saving, contracted to be paid Fryer, was to be upon W. & F. contract, which was a contract to do the whole work for $70,500; that they had paid W. & F. for the part of the work they did $23,393, leaving the balance of contract price $48,500, claiming that the estimate and schedule of prices attached to the W. & F. contract, by which the value of extra work was to be calculated, was no part of the contract between the company and W. & F., and insisting that the W. & F. contract, under which Fryer claimed, bound them to build as good a road as could be built with the materials furnished according to the specifications attached, and that the specifications should not operate as a limitation upon the work to be done, or as a qualification of the obligation to build as good a road as could possibly be built with the materials furnished.

The G., W. T. & P. R. R. being made defendant, June 8, 1874, answered by a general demurrer, a plea of want of privity, a plea of the statute of limitations of two years, and the other answers as made by I. R. R. Company, so far as pertinent for it.

After twice overruling the general and special demurrers of the G., W. T. & P. R. R., the court at last sustained the general demurrer, and dismissed that road from the suit.   There was a trial by jury and a verdict for Fryer for $32,000 against the I. R. R. Company, and that company brought the case up by writ of error, the defendant in error making one cross assignment of error.

The court erred in admitting in evidence the paper marked " C," called a schedule, attached to Warner & Fryer's contract, and dated November 2, 1868.   This paper, it is presumed, was among the original papers sent up with the transcript, and referred to but not incorporated in the record.

The objections urged to this paper were: 1st. It was not signed by defendant, nor identified as a part of the contract by the signature of F. S. Stockdale, president.

2d. It appears not to have been attached to the contract originally, or with the same fastenings, but afterwards with other fastenings.

3d. Because offered for the purpose of varying, adding to, and contradicting the contract.

4th. Because no words, either by utterance with the mouth or in writing, are admissible to add to the language of a contract in writing signed by the party to be charged thereby.

*Stockdale & Proctor*, for Indianola Railroad Company, plaintiff in error.— We suggest that the other defendant below, having been dismissed from the case four months

before the trial of this case, is not a party to this record. The plaintiff below, if desirous of a review of the case against that defendant, should have brought his own record upon his own bond.

*W. & H. L. Merriman* and *A. B. Peticolas,* for defendant in error.

I. Is the Indianola R. R. Co. *in esse ?*

We have been confronted with the assertion that it is not. It is rather a singular position for a party to a lawsuit to come into court and deny his or its own existence; and we will try to anticipate appellant's argument on this point in so far as to indicate why we assume its effort will be fruitless, by stating the following propositions:

1. A corporation can be created only by legislative enactment.

2. It can be dissolved only by the same authority or by legal adjudication.

3. With regard to appellant there has never been such action.

4. If there had been it would have been incompetent for either of those tribunals to have dissolved it so as to have placed it beyond the reach of legal process for debt and the like.

5. Even the repeal of the act of incorporation could not do that, much less would the legislative authority conferred upon another corporation to acquire its franchises have that effect.

We refer to: Bruffett *v.* The Great West. R. R. Co., 25 Ill., 357; 1 Wetherell R. R. Cases, 250; Seymour *v.* Long Dock Co., 20 N. J., 396; 1 Withrow Am. R. R. Cas., 250; Stall *v.* S. P. R. R. Co., 24 Tex., 125.

If the court be of opinion that the judgment should be reversed, we ask a consideration of our proposition raised by our cross-assignment of errors.

II. The Gulf, Western Texas & Pacific R. R. Co., is liable for the debt in controversy, and the district court erred in sustaining the exceptions to plaintiff's pleadings below, seeking to hold it liable.

We think it is clear that this point was erroneously decided against us by the court below. The question, while it is one of law, is also one of fact.

WATTS, J. COM. APP.— An error fundamental in character and going to the foundation of the action, though not assigned, is made manifest by the record. This suit was instituted against the Indianola Railroad Company, January 23, 1872. By amended petitions, one filed June 8, 1874, and the other January 20, 1875, it is alleged that on the 4th day of August, 1870, the legislature of the state of Texas passed an act entitled "An act to authorize the consolidation of the Indianola Railroad Company with the San Antonio & Mexican Gulf Railroad Company under the name and style of 'The Gulf, Western Texas & Pacific Railroad Company,'" in substance providing that the two companies might contract for their consolidation, and after that event the consolidated company should have all the corporate rights, powers and privileges belonging to the two companies; that April 22, 1871, the said companies entered into an agreement to consolidate, which was recorded the same day; that agreement referred to the act of 1870, and stated the property put in by each company; that May 19, 1871, the legislature of the state of Texas passed a further act entitled "An act to encourage the Gulf, Western Texas & Pacific Railway Company in the construction of their railways." Both the act of 1870 and 1871 are referred to and made part of the amended petition. It was also alleged that by said last act the state of Texas recognized the consolidation of said two companies, and ratified and confirmed

the same, and provided that they should thereafter be one corporation.  An examination of the act of 1870 shows that it was therein, among other things, provided, "That in case the Indianola Railroad Company shall contract with the San Antonio & Mexican Gulf Railroad Company for the construction of its road, and for the consolidation of the two companies, pursuant to the provisions of the present charters of said companies, then the consolidated company shall be thenceforward styled the 'Gulf, Western Texas & Pacific Railway Company,' and in that name shall have all the corporate powers, rights and privileges belonging to the two companies," etc.

"That in case of the consolidation of the said railroad companies, the capital stock of the consolidated company may be increased, at the option of the corporation, to twelve millions of dollars, the aggregate of the capital stock allowed under the present charters of the two companies."  Special Laws 1870, pp. 101, 102.

In the preamble of the act of 1871, it is recited that the two companies had consolidated into one company under the name and style of the "Gulf, Western Texas & Pacific Railway Company," and had organized the same to be managed according to the provisions of the charters of the two former companies.  The first section of that act is as follows: "That said agreement of consolidation is hereby ratified and confirmed, and that said joined and consolidated companies shall hereafter be one corporation, with powers, rights and privileges as provided in said original charters, under the name and style of the 'Gulf, Western Texas & Pacific Railway Company.'"  Besides, authority is given to the "Gulf, Western Texas & Pacific Railway Company" to borrow money on bonds, etc.  Special Laws 1871, pp. 425, 426.

The question presented is, was there any such artificial person as the "Indianola Railroad Company" at the institution of this suit, or at any time during the pendency

of the same? We are clearly of the opinion that from and after the passage of the act of 1871, that company ceased to exist, that its power to sue and capacity to be sued by that name had been extinguished, and that there was no such corporation as the "Indianola Railroad Company." All the powers and rights that it had ever enjoyed by virtue of the legislative charter had passed to and vested in another corporation, with a fixed and distinctive name, with all the capacities to sue and be sued that had theretofore been vested in the two old companies. This change had been wrought by the agreement of parties sanctioned by legislative enactment.

Here the question is not similar to that decided in the Georgia Railroad Cases by the supreme court, of the United States in 92d and 98th U. S. Reports. There the question was as to whether certain rights appertaining to the old companies had survived to the consolidated company. Here the simple question before us is, whether, after the consolidation was consummated by the act of 1871, there was any such corporation as the "Indianola Railroad Company," with power to sue and be sued, known to the law. The statement of the question furnishes the answer; thereafter, as to all matters pertaining to the affairs of the two old companies, the only person known to the law, with capacity to sue and be sued, was the "Gulf, Western Texas & Pacific Railway Company." Therefore, at the time of the institution of this suit, there was no such corporation as the "Indianola Railroad Company." The whole proceeding, so far as it pertains to that branch of the case, must be considered as of no validity or effect.

We think the judgment which was rendered against the extinct corporation was a nullity and the attempted appeal also ineffectual, and that the cause should be dismissed.

Whatever claim Fryer had against the old Indianola

Railroad Company, if it constituted a liability against the same, could have been enforced against the "Gulf, Western Texas & Pacific Railway Company." It had succeeded to all the rights and assumed all the liabilities of the extinct corporation. The City of Indianola v. Indianola Railroad Co., decided at this term; T. & P. R. W. Co. v. Murphy, 46 Tex., 357; Stephenson v. T. & P. R. W. Co., 42 Tex., 166, 167.

That corporation was by amended petition filed June 8, 1874, made a party defendant, and in that, together with other amendments subsequently filed, appropriate allegations were made as to its liability. But on the 20th day of January, 1875, the general and special exceptions of the corporation were sustained to so much of Fryer's pleadings as sought to make it liable for his claim, and judgment rendered accordingly.

In the record now before us, Fryer is shown to have filed his petition for writ of error against the said "Gulf, Western Texas & Pacific Railway Company," seeking to bring that judgment before the court for examination and revision, and had service made, and also filed an assignment of errors, and is now seeking to have that judgment revised. The court has no jurisdiction of the matter; there is neither a writ of error bond, bond for cost, or affidavit of inability to give such bond, found in the record. Without such bond or affidavit, the supreme court could acquire no jurisdiction of the matter.

We conclude on this branch of the case that it ought to be stricken from the docket at the cost of Fryer.

DISMISSED.